TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00100-CV






Valerie Noel Tidwell, Appellant



v.



Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT


NO. 11,204, HONORABLE W. T. MCDONALD, JR., JUDGE PRESIDING







 Following a jury trial, appellant Valerie Tidwell appeals from the district court's
decree terminating her parent-child relationship with her daughter D.T. and appointing the Texas
Department of Protective and Regulatory Services as the child's managing conservator. Tidwell
raises three issues contending that legally and factually insufficient evidence supports the jury's
findings that her parental rights should be terminated and that termination is in the child's best
interest. We will affirm the decree of termination.


Background


 D.T. was born in Virginia on March 24, 1997. By April 1998, appellant had
moved to Giddings and was living with a friend. When the friends had a disagreement about
sharing expenses, appellant moved in with her boyfriend and his mother. At the time, appellant
worked at Wal-Mart. On Sunday, April 26, 1998, appellant went to work while D.T. stayed with 
appellant's boyfriend's mother. That night, appellant gave D.T. a bath and noticed that she had
a rash around her buttocks, which she treated with ointment. On Monday, April 27, appellant had
the day off and spent it with D.T. Appellant testified that while bathing D.T. that night she
noticed D.T. still had a rash but it seemed a little bit better. On Tuesday, April 28, appellant
awoke at 7:30 a.m. and because she was late for work asked her boyfriend to take D.T. to her
babysitter's house in Lexington. Later that morning when the babysitter changed D.T.'s diaper,
she noticed D.T. had burn marks on the inside of her thighs, strips of blisters on her buttocks, and
some of D.T.'s skin had come off in the diaper. She called appellant at work between 9:00 and
9:30 a.m. and told appellant about D.T.'s condition. Appellant told the babysitter that she would
ask her manager for time off so that she could pick up D.T. and take her to the hospital. Later,
appellant called the babysitter and told her that she would pick up D.T. about 5:15 p.m. She did
not get to the babysitter's house until 6:00 p.m. After picking up D.T., she did not go directly
to the hospital but first stopped at her boyfriend's house before taking D.T. to the hospital at about
7:00 p.m.

 Randa Buchanan, an investigator with Child Protective Services, testified that she
was called to Smithville Hospital where she examined D.T., interviewed appellant, and talked with
the hospital staff. She was "shocked" when she saw the burns on both sides of D.T.'s buttocks
and the outer part of her vaginal area. She also noticed a bruise on D.T.'s right ear, two burns
between the child's first finger and thumb on her left hand, and a burn on her abdomen.
Photographs of D.T.'s burns taken at the hospital were admitted at trial. Appellant initially told
Buchanan she had no idea why the child had the burns and that the reason she had not brought
D.T. to the hospital sooner was that she could not get permission to leave work. When appellant
refused to tell Buchanan her supervisor's name, Buchanan became suspicious of her statement.
Later, appellant admitted to Buchanan that she had not asked her manager for any time off from
work.

 Lieutenant Nathan Lapham with the Giddings Police Department testified that he
met with appellant to discuss D.T.'s injuries. Over two days, appellant gave three written
statements to police, all of which were admitted into evidence. At their first meeting, appellant
told Lapham that she had no idea how D.T. was burned, and in her first written statement she
provided no explanation for D.T.'s burns. In her second written statement she explained that
D.T.'s burns were caused when she gave D.T. a bath that was too hot. Randy McReynolds, an
investigator with Child Protective Services, testified that D.T.'s burns were inconsistent with
burns from a hot bath or chemicals. The day after appellant gave her first two statements, she
gave a third written statement in which she confessed to spanking D.T. with a hot curling iron in
a moment of anger. She stated that she did not realize she had the hot curling iron in her hand
when she spanked D.T.

 Appellant was indicted for the offense of injury to a child. See Tex. Penal Code
Ann. § 22.04 (West Supp. 2000). She pleaded nolo contendere to knowingly and recklessly
causing serious bodily injury to D.T. by burning her and was placed on deferred adjudication
community supervision.

 On April 29, 1998, the Department was appointed temporary sole managing
conservator. The Department developed a service plan in an attempt to reunify appellant and D.T. 
Under the plan, appellant was to have a psychological evaluation, attend anger management as
well as parenting classes, make child support payments of $50 per month to the court, and provide
information to the court regarding alleged biological fathers and relatives. After appellant failed
to follow through with most aspects of the Department's service plan, in July 1999 the Department
petitioned the district court for sole managing conservatorship of D.T. and sought to terminate the
parent-child relationship between appellant and D.T. The Department urged three statutory bases
for termination, Family Code sections 161.001(1)(D), (E) and (L)(ix).(1) See Tex. Fam. Code Ann.
§ 161.001(1)(D), (E), and (L)(ix) (West Supp. 2000). Following presentation of the evidence, the
district court submitted a broad-form question to the jury asking if appellant's parental rights to
D.T. should be terminated. The jury charge included lengthy information setting out the three
statutory bases urged by the Department and instructing the jury that they must find clear and
convincing evidence to support one of the bases. The instruction also stated that "it must also be
proved by clear and convincing evidence that termination of the parent-child relationship must be
in the best interest of the child." The jury answered the question "yes," and, in accordance with
their answer, the district court terminated the parent-child relationship.



Discussion


 A court may terminate a parent-child relationship if it finds by clear and convincing
evidence that a parent has engaged in any of the listed conduct in section 161.001(1) of the Family
Code and that termination is in the best interest of the child. See Tex. Fam. Code Ann.
§ 161.001(1), (2); Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987);
Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). At trial in a termination case, the
Department is held to a clear and convincing standard of proof, which has been defined as "that
measure or degree of proof which will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established." In re G.M., 596 S.W.2d
846, 847 (Tex. 1980).

 Appellant contends that the evidence is insufficient to support the decision to
terminate her parental rights to D.T. based on section 161.001(1)(D), (E) or (L)(ix). See Tex.
Fam. Code Ann. § 161.001(1)(D), (E), (L)(ix). Additionally, she contends that the evidence did
not show that termination of the parent-child relationship was in the best interest of the child. See
id. at § 161.001(2).

 In deciding a legal sufficiency challenge in a parental rights termination case, the
appellate court considers only the evidence and inferences tending to support the findings and
disregards all evidence to the contrary. See Leal v. Texas Dep't of Protective & Regulatory Servs.,
25 S.W.3d 315, 321 (Tex. App.--Austin 2000, no pet.) (citing Garza v. Alviar, 395 S.W.2d 821,
823 (Tex. 1965); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951)). If more than a scintilla
of probative evidence supports the findings, they must be upheld. Leal, 25 S.W.3d at 321. In
determining a factual sufficiency challenge, we consider a neutral review of all the evidence, both
for and against the findings, and will set aside the judgment only if proof of the facts is so
obviously weak or the findings so contrary to the weight of the evidence as to be clearly wrong
and unjust. See id. (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Garza, 395 S.W.2d
at 823). We will not substitute our judgment for that of the trier of fact merely because we reach
a different conclusion. See Westech Eng'g., Inc. v. Clearwater Constructors, Inc., 835 S.W.2d
190, 196 (Tex. App.--Austin 1992, no writ).


Evidentiary Support for Section 161.001(1)

 Appellant contends in her first and second issues that the evidence is legally and
factually insufficient to support the decision to terminate her parental rights to D.T. based on
sections 161.001(1)(D), (E) and (L)(ix). See Tex. Fam. Code Ann. § 161.001(1)(D), (E), (L)(ix)
(West Supp. 2000).

 Section 161.001(1)(L)(ix) provides that a court may terminate the parent-child
relationship if the court finds by clear and convincing evidence that the parent has been convicted
or placed on community supervision including deferred adjudication community supervision for
being criminally responsible for the serious injury of a child under Penal Code section 22.04.
Appellant contends on appeal that section 161.001(1)(L)(ix) as applied to her is unconstitutional. 

 At trial, appellant did not object to the admission of evidence of her nolo contendere
plea and deferred adjudication disposition or present the district court with a constitutional
argument. Because appellant failed to raise her constitutional contention before the district court,
she has not preserved it for appellate review. See In re W.A.B., 979 S.W.2d 804, 808 (Tex.
App.--Houston [14th Dist.] 1998, pet. denied) (constitutional issue not raised in trial court is
waived on appeal); Tex. R. App. P. 33.1(a).

 Regarding appellant's contention that the evidence is legally and factually
insufficient to support termination of the parent-child relationship, admitted as evidence at the
termination proceeding was a certified copy of the order placing her on deferred adjudication
community supervision for ten years for the offense of injury to a child. This evidence alone is
sufficient to sustain the jury's finding that there was clear and convincing evidence to support
termination based on section 161.001(1)(L)(ix). Issues one and two are overruled.


Evidentiary Support For Section 161.001(2)

 In her third issue, appellant contends that the evidence is legally and factually
insufficient to support the jury's finding that terminating the parent-child relationship was in
D.T.'s best interest. The Texas Supreme Court has recognized several factors that may be
considered in determining whether termination is in a child's best interest:


(A) the desires of the child; (B) the emotional and physical needs of the child now
and in the future; (C) the emotional and physical danger to the child now and in the
future; (D) the parental abilities of the individuals seeking custody; (E) the
programs available to assist these individuals to promote the best interest of the
child; (F) the plans for the child by these individuals or by the agency seeking
custody; (G) the stability of the home or proposed placement; (H) the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one; and (I) any excuse of the acts or omissions of the
parent.



Holley, 544 S.W.2d at 372 (footnotes omitted). This list of relevant considerations is not
exhaustive; other factors may be considered when appropriate. See id. Likewise, a fact finder
is not required to consider all of the listed factors. See id. The record in this case contains
evidence regarding several of the Holley factors.

 Since June 1998, D.T. has been living with appellant's aunt. She testified about
how appellant and D.T. related since she had been taking care of D.T. She testified that when
appellant would come to visit D.T., the little girl would not run to greet her mother. In fact, she
seemed not to notice her and would just continue playing. After a visit, whenever appellant would
leave, D.T. did not cry or express any sadness about her leaving. Regarding the danger of
emotional or physical danger to D.T. now or in the future, appellant's aunt explained that
appellant had given her several inconsistent versions about how D.T. had been burned. Because
of appellant's several versions about how D.T. was burned, appellant's aunt believed that appellant
intentionally inflicted the burns and was concerned about there being possible future events. 
Appellant's aunt testified that while she had been caring for D.T., she told appellant she was
welcome to call her and ask about how D.T. was doing. Appellant called her only three times and
never asked about D.T.'s welfare. Appellant's aunt believed that appellant was young and had
a lot of growing up to do. Appellant testified that she had left home when she was fifteen years
old and had led a "wild lifestyle." Appellant's aunt thought D.T. needed a stable, loving, and
nurturing home. Appellant's aunt also testified that because appellant had not made significant
changes in her lifestyle and had not followed through with the Department's reunification plan she
did not think placing D.T. back with appellant was in D.T.'s best interest.

 Wendy Pickett, a caseworker with Child Protective Services, testified that appellant
was offered several special services including parenting classes and psychological counseling.
Appellant, however, did not attend any counseling sessions in 1999. Appellant initially attended
the parenting classes but eventually began missing classes. Appellant also had scheduled visitation
with D.T. four times per month. This schedule, however, was reduced by the court to visits twice
a month because appellant was not consistent with her visits. Both Pickett and Pacha testified that
they told appellant they were willing to help her with transportation to visit with D.T. Out of
forty-eight possible visits, appellant missed twenty-four. From June 1999 to October 1999,
appellant visited D.T. only three times. Although appellant testified that she missed several
scheduled visits with D.T. because of car trouble, Pickett testified that appellant offered no
explanation or reason for missing her parent-child visits. Pickett believed it was in D.T.'s best
interest to terminate the parent-child relationship.

 Appellant testified before the jury that she was currently working at the Chevron
gas station in Giddings. During rebuttal, however, the manager of the Giddings Chevron testified
that appellant did not work at the station and in fact had been fired the Thursday before trial
because she had been videotaped during work helping another employee steal merchandise.
Additionally, despite confessing to police that she burned D.T. with a hot curling iron, at the
termination proceeding appellant recanted her confession, denied hitting D.T. with a hot curling
iron, and provided alternative explanations about how D.T. was burned. It is relevant to note that
appellant testified that neither her boyfriend nor her boyfriend's mother caused D.T.'s burns.

 We hold that the evidence is legally sufficient to support the jury's finding that
termination was in D.T.'s best interest. Additionally, the evidence is factually sufficient as the
proof of the facts is not so obviously weak or the finding so contrary to the weight of the evidence
as to be unjust. Appellant's third issue is overruled.

 We affirm the district court's decree terminating the parent-child relationship
between appellant and D.T.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: January 25, 2001

Do Not Publish


1.   Section 161.001 provides that the court may terminate the parent-child relationship if the
court finds by clear and convincing evidence that the parent has (D) knowingly placed or
knowingly allowed the child to remain in conditions or surroundings which endanger the physical
or emotional well-being of the child; (E) engaged in conduct or knowingly placed the child with
persons who engaged in conduct which endangers the physical or emotional well-being of the
child; and (L)(ix) has been placed on deferred community supervision for being criminally
responsible for serious injury of a child under section 22.04 of the Penal Code. Tex. Fam. Code
Ann. § 161.001(D), (E), & (L)(ix) (West Supp. 2000). 


lant and D.T. related since she had been taking care of D.T. She testified that when
appellant would come to visit D.T., the little girl would not run to greet her mother. In fact, she
seemed not to notice her and would just continue playing. After a visit, whenever appellant would
leave, D.T. did not cry or express any sadness about her leaving. Regarding the danger of
emotional or physical danger to D.T. now or in the future, appellant's aunt explained that
appellant had given her several inconsistent versions about how D.T. had been burned. Because
of appellant's several versions about how D.T. was burned, appellant's aunt believed that appellant
intentionally inflicted the burns and was concerned about there being possible future events. 
Appellant's aunt testified that while she had been caring for D.T., she told appellant she was
welcome to call her and ask about how D.T. was doing. Appellant called her only three times and
never asked about D.T.'s welfare. Appellant's aunt believed that appellant was young and had
a lot of growing up to do. Appellant testified that she had left home when she was fifteen years
old and had led a "wild life